Filed 3/25/26  P. v. Torres CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084493 |
| v. | (Super.Ct.No. RIF2300353) |
| ANGEL SALAS TORRES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark Singerton, Judge.
Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for
Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney
General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Liz
Olukoya, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Angel Salas Torres of committing one felony count of lewd and
lascivious conduct against his stepdaughter, Jane Doe.  (Pen. Code, § 288, subd. (c)(1)

1

(section 288(c)(1)); unlabeled statutory references are to this code.) On appeal, Torres argues that the trial court abused its discretion by declining to reduce the felony to a misdemeanor. We affirm.

BACKGROUND

Torres was born in 1986, and Doe was born in December 2005. In 2006, Doe's mother, Sandra L., met Torres, and they married in 2016. They had two children together. Torres acted like a father to Doe and her older half brother. Doe considered Torres to be her father because she had known him since she was an infant.

In 2023, the People charged Torres by amended information with committing one felony count of lewd and lascivious conduct against Doe on or about February 4, 2020, when she was 14 or 15 years old and more than 10 years younger than Torres. (§ 288(c)(1).) The People alleged two aggravating factors: (1) Doe was particularly vulnerable, and (2) Torres took advantage of a position of trust and confidence to commit the crime.

Doe, Torres, and Sandra testified at trial. Doe was 17 years old when she testified. In February 2020, Doe was 14 years old and attending eighth grade. Doe lived with her mother, Torres, her half siblings, and her grandparents.

After she arrived home from school one day in early February 2020, Doe went into her bedroom, where she played a video game on a television. Doe was alone in the room with the door open. She was playing the game with friends and communicating with them via headphones. Torres arrived home from work while Doe was playing the

2

game.  He went into Doe's bedroom to greet her, sat on her bed, and then got up and hugged her head by placing one hand on either side and giving her head a slight squeeze. That was how he typically greeted her.

After Torres hugged Doe's head, he lingered behind her chair.  He then moved one of his hands over her shoulder and placed his hand inside her pants and under her underwear.  Torres briefly squeezed "the front top part" of Doe's vagina.  Doe testified that it was painful.  She attempted to move Torres's hand, but he responded by trying to "go[] deeper."

Doe continued to resist and successfully pushed Torres's hand away.  She then stood up, backed away from Torres, and told him, "'Stop.'"  Torres laughed and left the room.

Sandra was home, but Doe did not tell her what happened, because Doe feared that her mother would not believe her.  After the incident, Doe was in shock and felt "weirded out" when at home with Torres.  She stayed in her bedroom, and Torres did not bother her.

Two days after the incident, Doe told her church pastor, Lidia M., about the incident.  Doe appeared nervous when she approached Lidia to speak.  Doe started crying when she described what happened.

Lidia and her husband, who was also a pastor, went to the family's house the next day and helped Doe tell her mother about the incident.  Sandra told Doe that she wished Doe had told her sooner, and then she asked Doe to leave the room.

Sandra called Torres and asked him to return home. She told him that their pastors were there to speak with them. When Torres arrived home, Sandra was waiting with both pastors. She asked Torres if there was anything he needed to tell her, and he asked what she was talking about. One of the pastors then told Torres that they had spoken with Doe "and that something happened." Sandra then asked Torres, "'Is it true what they're saying?'" Sandra testified that she did not give Torres any more details or tell him that Doe accused him of touching her, because Sandra "wanted to hear it from him." Torres, however, testified that Sandra told him that Doe had disclosed that he touched "'her private parts.'"

Torres told Sandra that the accusation was not true, and he left the house after she continued pressing him to admit what he had done. Torres testified that he left to protect the children from hearing him and Sandra argue.

Shortly after Torres left, he sent Doe messages on Snapchat. Doe took screenshots of the messages before they disappeared. Torres initially texted: "You tell them what ever you wanna tell them, I'm sorry for not being a good dad." He told Doe to tell her mother the truth about him touching her, because Sandra kept asking him if it was true. Torres followed up: "That is why I'm leaving [¶] I'm not going to go to jail so I have to go." He explained that "going to jail" is what happens "[i]f you get accused of touching a minor." Doe texted Torres that law enforcement was on its way to the house and that "[t]hey r reading everything your saying," which was "only making it worse." Torres told Doe, "Don't save the messages and don't show the ones I'm about to write To the

4

kids." Doe texted that she had disclosed what he "did because that's not right and u know a father should never do that to his daughter and u know I'm right." Torres did not respond to that text. His next text read, "Do you really want our family destroyed?"

Torres testified at trial and denied that he ever touched Doe inappropriately. He described how it would have been physically impossible for him to reach Doe's genitalia by reaching over her gaming chair, because he is only five feet nine inches tall. When Torres apologized to Doe about "not being a good dad," he "was talking about because they always told me that, 'You're always—why you always trippin? Why you always yelling?' But I was a little strict on them."

Doe testified at trial that she still loved Torres as her father, and when she told her pastor what happened, she did not want Torres to get in trouble.

The jury convicted Torres on the sole charged count of lewd and lascivious conduct against Doe. (§ 288(c)(1).) After trial, the prosecutor and defense counsel stipulated to the two alleged aggravating factors that (1) Doe was a particularly vulnerable victim and (2) Torres abused a position of trust. The court accepted the stipulation. The court ordered a report on Torres's mental condition under section 288.1.[1]

---

[1] Section 288.1 provides: "Any person convicted of committing any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years shall not have his or her sentence suspended until the court obtains a report from a reputable psychiatrist, from a reputable psychologist who meets the standards set forth in Section 1027, as to the mental condition of that person."

The probation department recommended that Torres be sentenced to 24 months of formal probation, with a two-year suspended prison sentence and 365 days of custody. The probation department reported that Torres was homeless and living on the streets near his workplace. Sandra told a probation officer that Doe saw a therapist for about one month after the incident but discontinued therapy because "she felt fine." According to the probation department, the following factors supported granting probation: (1) the nature and circumstances of the offense were less serious compared to other instances of the same crime, (2) Torres had no criminal history and therefore no pattern of regular or increasingly serious criminal conduct, (3) Torres was willing and able to comply with probation conditions, (4) the likely effects of imprisonment on Torres would be serious, and (5) the adverse collateral consequences of a felony conviction could have a serious impact on Torres's life. The probation department also reported that Torres had a below-average risk of recidivism. If the trial court denied probation, the probation department recommended that the court sentence Torres to the midterm of two years in state prison.

Robert Suiter, Ph.D., Psy.D., conducted a psychological assessment of Torres "to assess his potential recidivism." Torres completed a test that can "assist in identifying offenders with potentially deviant sexual interests." "The results were entirely within normal limits." Suiter explained that the results indicated that Torres did not suffer from "a pedophilic disorder." Suiter also performed a test "designed to assist in the prediction of sexual and violent recidivism for sexual offenders." "Torres scored a 0 on this risk

assessment instrument," which Suiter reported placed "Torres in the below average category relevant to other adult male sexual offenders."

At sentencing, the trial court stated that it had reviewed and considered the probation report and the section 288.1 report. Defense counsel argued that section 288(c)(1) is a wobbler offense, so it was within the court's discretion to reduce the felony conviction to a misdemeanor under section 17, subdivision (b) (section 17(b)). Counsel argued that the underlying conduct was "clearly at the bottom of the scale" of conduct that would violate section 288(c)(1). Counsel noted that it was a single incident without any prior inappropriate conduct, and it was "relatively minor for things that are charged under this section." Counsel asked, "if this case is not at the misdemeanor level, what case could possibly be at the misdemeanor level?" In addition, counsel stated that Torres had continued to support the family financially, and his ability to do that would be negatively affected by a felony conviction.

The prosecutor recommended against reducing the conviction to a misdemeanor and in favor of sentencing Torres to the two-year midterm. In response to defense counsel's rhetorical question, the prosecutor argued that a violation of section 288(c)(1) can occur without skin-to-skin contact and without touching the victim's genitalia. The prosecutor argued that Torres's touching of Doe's vagina under her clothes thus was not a relatively minor violation of section 288(c)(1). In addition, the prosecutor noted the familial relationship and Torres's conduct after the disclosure also weighed against reduction and was "nothing close to a misdemeanor."

The court described and weighed the mitigating and aggravating factors and concluded that the unusual circumstances of the case justified granting probation. The court reasoned that the following circumstances supported granting probation: (1) Torres did not appear to be a threat to either Doe or "to society at large"; (2) Torres had no criminal history; (3) the crime was an unplanned and isolated incident, did not involve "great violence," and did not result in any physical injury to Doe, and Torres was unarmed; (4) Suiter reported that there was zero risk of recidivism and that Torres did not suffer from any type of pedophilic disorder; (5) although Doe was a vulnerable victim, she was not as vulnerable as a young child or a victim who was enticed in some way; (6) Doe suffered some emotional injury but continued to express that she loved Torres and did not want him taken into custody; (7) it appeared that Torres would comply with the terms of probation; (8) Torres was gainfully employed; (9) Torres had no contact with Doe since the trial, in compliance with a no-contact order; (10) Torres cared for Doe; and (11) Torres's employment would be jeopardized if he was incarcerated, which would negatively affect the family.

The court imposed but suspended the midterm sentence of two years in state prison, placed Torres on probation for three years, and ordered that he serve 180 days in custody through the county sheriff's labor program.

After the court stated the terms of probation, set restitution, and issued other relevant sentencing orders, the court adjourned the hearing. The court subsequently recalled the case to address the defense motion to reduce the felony to a misdemeanor.

8

The court denied the motion for several reasons. The court found that the mitigating factors that warranted granting probation did not also warrant reducing the felony to a misdemeanor. The court agreed with defense counsel that "on a sliding scale of sexual assault crimes" Torres's conduct "is a lot less egregious than many others, it is an isolated incident, and it is one touching." The court nevertheless denied the motion for the following reasons: "[I]t's a touching under the clothing, it's a touching of the genital area. It was done in a situation where (Jane Doe) clearly was not expecting this to ever happen to her and should have never happened, . . . and it's by somebody who is in a position of trust, being her father. So it's—that kind of conduct is felony conduct in my estimation." The court noted that the impact on Torres's job prospects was "an important consideration" but told Torres that in the future he would be able to file a section 1203.4 motion to expunge the conviction, which the court could grant if Torres complied with the terms of probation.

DISCUSSION

Torres argues that the trial court abused its discretion by not reducing the felony conviction to a misdemeanor. We disagree.

Most crimes are classified as felonies or misdemeanors. (*People v. Park* (2013) 56 Cal.4th 782, 789 (*Park*).) But some crimes are not legislatively designated as either and instead "are chargeable or, in the discretion of the court, punishable as either a felony or a misdemeanor." (*Ibid.*; § 17(b).) Such crimes "are commonly referred to as 'wobblers.'" (*Park*, at p. 789.)

9

Torres's conviction of lewd and lascivious conduct in violation of section 288(c)(1) is a wobbler because it is punishable "by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year." (§ 288(c)(1); see also *Park*, *supra*, 56 Cal.4th at p. 790.)

If the jury finds a defendant guilty of committing a wobbler crime that was not charged as a misdemeanor, then the trial court has discretion to classify the crime as a misdemeanor when it grants probation. (§ 17, subd. (b)(3).) The court has broad discretion in deciding whether to reduce a wobbler to a misdemeanor under section 17(b). (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978, 980 (*Alvarez*).) "As a general matter, the court's exercise of discretion under section 17(b) contemplates the imposition of misdemeanor punishment for a wobbler 'in those cases in which the rehabilitation of the convicted defendant either does not require, or would be adversely affected by, incarceration in a state prison as a felon.'" (*Park*, *supra*, 56 Cal.4th at p. 790.) Factors relevant to the determination include "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his [or her] traits of character as evidenced by his [or her] behavior and demeanor at the trial.'" (*Alvarez*, at p. 978.) "When appropriate, judges should also consider the general objectives of sentencing such as those set forth in" the California Rules of Court (*ibid.*), which include "'protecting society, punishing the defendant, deterring crime, encouraging the defendant to lead a law-abiding life, and preventing the defendant from committing new crimes'" (*People v. Murphy* (2025) 116 Cal.App.5th 249, 254; Cal. Rules of Court,

rule 4.410 [general objectives in sentencing]).  But "a determination made outside the perimeters drawn by individualized consideration of the offense, the offender, and the public interest 'exceeds the bounds of reason.'"  (*Alvarez*, at p. 978.)

We review the trial court's determination under section 17(b) for abuse of discretion.  (*Alvarez*, *supra*, 14 Cal.4th at pp. 977-978.)  The appellant bears the burden of demonstrating that the court's exercise of discretion was arbitrary or irrational.  (*Id.* at p. 977.)  Absent such a showing, we presume that the trial court "acted to achieve legitimate sentencing objectives."  (*Ibid.*)  We will not reverse the trial court's determination "'merely because reasonable people might disagree.'"  (*Id.* at p. 978.)

The trial court acted well within its discretion in declining to reduce the felony conviction to a misdemeanor.  The court based its decision on numerous relevant considerations that are supported by the record.  Although the court determined that there were mitigating circumstances that supported granting probation, the court concluded that those circumstances did not warrant reduction of the conviction to a misdemeanor.  The court reasoned that the single incident of lewd and lascivious conduct was significant enough to warrant felony treatment, given the parental relationship between Torres and Doe, Torres's abuse of the position of authority inherent in that relationship, and the fact that Torres made skin-to-skin contact with Doe's vagina.  The court also considered how a felony conviction would impact Torres's future employment prospects, but the court concluded that the potential adverse consequences for Torres's employability did not warrant reduction when weighed against the seriousness of the offense conduct.  The trial

11

court thus properly analyzed the nature and circumstances of the offense (*Alvarez*, *supra*, 14 Cal.4th at p. 978) and reasonably concluded that the conviction should not be reduced to a misdemeanor. That determination was not arbitrary, irrational, or "made outside the perimeters drawn by individualized consideration of the offense." (*Ibid*.)

Torres's argument to the contrary is unpersuasive. He contends that the trial court's determination was arbitrary "because the trial court did not consider factors 'pertinent to the specific defendant being sentenced' to determine if [Torres's] rehabilitation 'either does not require, or would be adversely affected by' the felony conviction."

The argument fails for two reasons. First, as we have explained, the trial court expressly based its decision on thorough and reasoned analysis. That is not arbitrary decision making.

Second, the record reflects that the court did consider the factors that Torres contends it did not consider. In declining to reduce the felony to a misdemeanor, the court stated that it did not believe that the same mitigating factors that justified granting probation warranted reducing the offense to a misdemeanor. Thus, when the court declined to reduce the felony to a misdemeanor, it weighed and rejected all of the many mitigating circumstances that it analyzed in imposing the sentence. Therefore, contrary to Torres's argument, the court considered such factors as the egregiousness of the offense, Torres's love of Doe, Torres's compliance with the court's no-contact order and willingness to comply with the probationary terms, Torres's lack of a criminal history,

Suiter's report that Torres is at a very low risk of reoffending and does not suffer from pedophilic disorder, and the effect that a felony conviction would have on Torres's employment and thus his family.

For these reasons, we conclude that the trial court did not abuse its discretion by declining to reduce the felony lewd and lascivious conduct conviction to a misdemeanor.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

LEE
J.